UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-01372-O |
| | § | |
| JONES LANG LASALLE AMERICAS, | § | |
| INC. and NORRIS & SON ELECTRIC, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are BNSF's Motion for Partial Summary Judgment (ECF Nos. 27–29),

filed April 2, 2021; JLL's Response (ECF Nos. 40–42), filed May 28; BNSF's Reply (ECF Nos.

50, 52), filed June 17; JLL's Motion for Summary Judgment (ECF Nos. 83–85), filed November

15; BNSF's Response (ECF Nos. 89–91), filed December 6; and JLL's Reply (ECF Nos. 92–93),

filed December 20. The Court **GRANTS** the motions in part and **DENIES** the motions in part.

### I.       BACKGROUND

#### A.  Overview

BNSF Railway Company operates a railyard in Belen, New Mexico. Jones Lang Lasalle

Americas, Inc. ("JLL") provides property management and maintenance services for BNSF at

the Belen railyard,[1] and Norris & Son Electric, Inc. provides electrical services.[2] BNSF filed this

lawsuit against JLL and Norris concerning coverage for another lawsuit filed by Carlos Barela.

---

[1] BNSF's Summ. J. App. Ex. B, 65–70, ECF No. 29-2.
[2] *Id.* at Ex. C, 1, 20, ECF No. 29-3.

Barela worked as a switchman for BNSF at the Belen railyard.[3] In April 2019, a train struck Barela as he was working.[4] One of Barela's coworkers had mistakenly sent the train down the wrong track.[5] Barela suffered serious injuries that required amputation of his legs.[6] Barela sued BNSF, JLL, Norris, and another electrical company in New Mexico state court.[7] He alleges the defendants were negligent and breached their contracts by failing to properly maintain the worksite and provide adequate lighting.[8] Barela's lawsuit is still pending.[9]

Meanwhile, BNSF sued JLL and Norris in this Court for breach of contract. BNSF and JLL have an agreement that requires JLL to defend and indemnify BNSF in any suit arising out of JLL's maintenance duties.[10] BNSF and Norris have a similar agreement.[11] BNSF claims that JLL and Norris are violating those agreements by refusing to indemnify and defend BNSF in the underlying lawsuit.[12] BNSF and Norris settled their dispute and filed dismissal papers on October 6, 2021.[13] The dispute between BNSF and JLL is still live.

### B. The JLL Agreement

In 2016, BNSF and JLL executed the Real Estate Management Services Agreement.[14] JLL agreed to provide property management services at over 2,500 BNSF facilities, including

---

[3] JLL's Summ. J. App. Ex. C, 4, ECF No. 85-3.
[4] *Id.* at 4–5.
[5] *Id.*
[6] *Id.* at 5.
[7] *Id.* at 1.
[8] *Id.* at 6–16.
[9] *See Barela v. BNSF Ry. Co.*, Case No. D-1314-cv-2019-01333 (13th Dist. Ct., Valencia County, N.M. Nov. 5, 2019).
[10] JLL's Summ. J. App. Ex. A, 17–20, ECF No. 85-1.
[11] BNSF's Summ. J. App. Ex. C, ECF No. 29-3.
[12] BNSF's First Am. Compl. 33–41, ECF No. 17.
[13] Agreed Stipulation of Partial Dismissal, ECF No. 77.
[14] BNSF's Summ. J. App. Ex. B, 1, ECF No. 29-2.

the Belen railyard.[15] Those services range from lighting and electrical maintenance to building and yard upkeep.[16]

The agreement contains a section releasing BNSF from liability. Under that section, JLL "shall indemnify and hold harmless BNSF for all judgments, awards, claims, demands, and expenses . . . for injury or death to all persons" arising from JLL's "acts or omissions or failure to perform any obligation" under the agreement.[17] JLL must assume liability even if the "injury was occasioned by or contributed to by the negligence of BNSF, its agents, servants, employees or otherwise."[18] On claims for which JLL assumes liability, JLL also agreed to "adjust and settle" those claims, and to "appear and defend" BNSF in lawsuits brought on those claims.[19] But the liability section contains a special provision applying to "any Services to be performed in the State of New Mexico," that are "held by a court of competent jurisdiction as being governed by" New Mexico's anti-indemnity statute.[20] For such services, JLL's obligation to indemnify BNSF "is limited to the extent the liability, damages, losses or costs subject to such indemnity obligations are caused by, or arise out of, the acts or omissions of [JLL] or its officers, employees or agents."[21]

The agreement also requires JLL to obtain insurance. JLL must carry commercial general liability insurance that covers, among other things, bodily injury and property damage.[22] Norris must carry similar commercial general liability insurance that is primary to other insurance

---

[15] *Id.* at 37–63.
[16] *Id.* at 67–70.
[17] *Id.* at 17–18.
[18] *Id.* at 18 (capitalization altered and emphasis omitted).
[19] *Id.*
[20] BNSF's Summ. J. App. Ex. B, 19, ECF No. 29-2.
[21] *Id.*
[22] *Id.* at 20.

carried by BNSF.[23] In practice, JLL carries two insurance policies: Federal Insurance Company ("FIC") is the primary insurer, and Zurich is the excess insurer.[24]

### C.  The Dispute

Soon after Barela filed his lawsuit in New Mexico state court, BNSF sent a demand letter to JLL and Norris.[25] BNSF demanded that JLL and Norris (1) defend and indemnify BNSF and (2) adjust and settle the underlying lawsuit.[26] BNSF demanded indemnity for all claims in the underlying lawsuit, including those directed solely at BNSF.[27] BNSF also asserted the right to object to any counsel chosen to defend it.[28]

Norris's insurer hired counsel to defend the parties in the underlying lawsuit, subject to a reservation of rights.[29] BNSF accepted the counsel that Norris's insurer retained to defend against Barela's claims.[30] However, because Norris's insurer included a reservation of rights, BNSF retained additional, independent counsel.[31] JLL's primary insurer, FIC, agreed to indemnify BNSF for amounts in excess of Norris's policy.[32] But JLL's excess insurer, Zurich, did not.[33] Zurich believes that BNSF does not qualify as an additional insured on JLL's policy and that JLL's agreement with BNSF did not require that BNSF be named as an additional insured.[34]

---

[23] BNSF's Summ. J. App. Ex. C, 5, ECF No. 29-3.
[24] JLL's Summ. J. App. Ex. G, 1–2, ECF No. 85-7.
[25] BNSF's Summ. J. App. Ex. D, ECF No. 29-4.
[26] *Id.*
[27] *Id.* at 4.
[28] *Id.*
[29] JLL's Summ. J. App. Ex. I, ECF No. 85-9.
[30] *Id.* at Ex. Q, 15–18, ECF No. 85-17.
[31] *Id.* at 26.
[32] *Id.* at Ex. K, ECF No. 85-11.
[33] *Id.* at Ex. M, ECF No. 85-13.
[34] *Id.*

On December 28, 2020, BNSF sued JLL and Norris for breach of contract in this Court.[35] The amended complaint asserts six counts: (1) JLL's breach of contractual obligation to defend and hold harmless; (2) Norris's breach of contractual obligation to defend and hold harmless; (3) JLL's breach of contractual obligation to adjust and settle; (4) Norris's breach of contractual obligation to adjust and settle; (5) JLL's breach of contractual obligation to obtain insurance on BNSF's behalf; and (6) requests for declarations requiring JLL and Norris to defend, adjust, settle, and indemnify under Texas law.[36]

In April 2021, BNSF moved for partial summary judgment on Counts 1 through 4 of the amended complaint.[37] The parties then engaged in discovery, and in October BNSF and Norris settled.[38] BNSF filed a stipulation of dismissal that effectively dismissed Counts 2 and 4, as well as "all claims and controversies" in the lawsuit between BNSF and Norris.[39] The next month, JLL moved for summary judgment on all claims against it.[40] Both summary judgment motions are ripe for the Court's review.

## II.      LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists

---

[35] BNSF's Compl., ECF No. 1.
[36] BNSF's First Am. Compl. 33–41, ECF No. 17.
[37] BNSF's Mot. for Summ. J., ECF No. 27.
[38] Agreed Stipulation of Partial Dismissal, ECF No. 77.
[39] *Id.*
[40] JLL's Mot. for Summ. J., ECF No. 83.

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

A court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

### III.    ANALYSIS

BNSF alleges that JLL breached their agreement. "The elements of a breach of contract claim under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021) (citation omitted). Count 1 alleges, in part, breach of JLL's duty to indemnify BNSF. The parties dispute the substantive law that governs the duty to indemnify. Texas law indisputably governs the other claims.

### A. Agreement to Indemnify

BNSF alleges that JLL breached the indemnity provisions of the agreement.[41] According to BNSF, JLL is bound by the general indemnity provision in the contract,[42] which requires JLL

---

[41] BNSF's First Am. Compl. 34, ECF No. 17.
[42] BNSF's Summ. J. Br. 23–25, 44–45, ECF No. 28.

to indemnify BNSF even if the "injury was occasioned by or contributed to by the negligence of BNSF."[43] JLL contends that BNSF ignores the agreement's *other* indemnity provision, which carves out special rules for services performed in New Mexico.[44] JLL says that under that carve-out provision, it is not obligated to indemnify BNSF for BNSF's own negligence.[45]

The parties dispute whether New Mexico or Texas law applies. In general, the agreement says it "shall be exclusively governed by and exclusively interpreted under the laws of the State of Texas without regard to the principles of conflict of laws of such state."[46] But the agreement does not stop there. The agreement contains a series of carve-outs for various states. One of those carve-outs is for New Mexico. The New Mexico carve-out applies to services that are "held by a court of competent jurisdiction as being governed by" New Mexico's anti-indemnity statute.[47] If the carve-out applies, JLL must indemnify BNSF only for losses caused by JLL.[48] The parties do not dispute that JLL's services were performed in New Mexico and that this Court is one of "competent jurisdiction."[49] The question is whether New Mexico's anti-indemnity statute applies.[50]

The answer turns on a conflict-of-laws analysis. "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013). Under Texas choice-of-law rules, a court "need not decide which state's laws apply unless those laws conflict." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). That is, "[i]f the result

---

[43] BNSF's Summ. J. App. Ex. B, 18, ECF No. 29-2 (capitalization altered and emphasis omitted).
[44] JLL's Summ. J. Br. 21–22, ECF No. 84.
[45] *Id.*
[46] BNSF's Summ. J. App. Ex. B, 33, ECF No. 29-2.
[47] *Id.* at 19.
[48] *Id.*
[49] BNSF's Summ. J. Br. 25, ECF No. 28; JLL's Summ. J. Br. 23, ECF No. 84.
[50] BNSF's Summ. J. Br. 25, ECF No. 28; JLL's Summ. J. Br. 23, ECF No. 84.

would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010) (internal quotation marks omitted) (quoting *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.)). The parties offer three possibilities: (1) apply the New Mexico carve-out provision as written; (2) apply the general indemnity provision subject to New Mexico law; or (3) apply the general indemnity provision subject to Texas law.[51] JLL argues the result of all three avenues is the same: JLL is not required to indemnify BNSF for BNSF's own negligence.[52] So, JLL says, the Court need not even decide which state's law governs. *See Sonat Expl.*, 271 S.W.3d at 231. The Court agrees.

Start with the New Mexico carve-out provision. The plain language of the carve-out requires JLL to indemnify BNSF only for losses caused by JLL: "[JLL]'s obligation to indemnify BNSF contained herein is limited to the extent the liability, damages, losses or costs subject to such indemnity obligations are caused by, or arise out of, the acts or omissions of [JLL] or its officers, employees or agents."[53] BNSF does not dispute that this language—if it applies—absolves JLL of any obligation to indemnify BNSF for BNSF's own negligence.

Applying New Mexico law yields the same result. The New Mexico anti-indemnity statute applies to "construction contract[s]." N.M. Stat. § 56-7-1(A) (1978). For such contracts,

> A provision . . . that requires one party to the contract to indemnify, hold harmless, insure or defend the other party to the contract . . . against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of the state.

---

[51] JLL's Summ. J. Br. 21–30, ECF No. 84.
[52] *Id.* at 21–22.
[53] BNSF's Summ. J. App. Ex. B, 19, ECF No. 29-2.

*Id.* § 56-7-1(A). Applied to the agreement here, the New Mexico anti-indemnity statute voids the provision requiring JLL to indemnify BNSF for injury "occasioned by or contributed to by the negligence of BNSF, its agents, servants, employees or otherwise."[54] Instead, the general indemnity provision "shall be enforced only to the extent that" it requires JLL to indemnify BNSF for JLL's negligence. *Id.* § 56-7-1(B). BNSF agrees, admitting that "if a court decides that [section 56-7-1] does apply, it will apply only to limit JLL's obligations to claims related to its own negligence."[55]

BNSF insists, however, that section 56-7-1 does not apply because the agreement is not a "construction contract." The statute broadly defines "construction contract" as an "agreement relating to construction, alteration, repair or maintenance of any real property in New Mexico." N.M. Stat. § 56-7-1(E). The parties' agreement covers a variety of real estate maintenance services.[56] Indeed, the title is "Real Estate Management Services Agreement."[57] And the underlying lawsuit alleges that the parties negligently failed to maintain the worksite.[58] Applying the plain language of section 56-7-1, New Mexico courts have held that "work on an improvement to real property that is required to keep that improvement in a good state of repair and operating properly is within the scope of the construction anti-indemnity statute." *Holguin v. Fulco Oil Servs. L.L.C.*, 2010-NMCA-091, ¶ 32, 149 N.M. 98, 245 P.3d 42. BNSF's attempts to distinguish *Holguin* are unpersuasive and do not justify deviating from the plain language of the

---

[54] *Id.* at 18 (capitalization altered and emphasis omitted).
[55] BNSF's Resp. to JLL's Mot. for Summ. J. 20, ECF No. 90.
[56] BNSF's Summ. J. App. Ex. B, 67–70, ECF No. 29-2.
[57] *Id.* at 1 (capitalization altered).
[58] JLL's Summ. J. App. Ex. C, 6–16, ECF No. 85-3.

statute.[59] Section 56-7-1 applies to "maintenance" contracts, and the agreement here is indisputably a maintenance contract.

Moreover, section 56-7-1(B) permits precisely the kind of carve-out the parties agreed to. An agreement "may contain a provision" that "requires one party to the contract to indemnify, hold harmless or insure the other party to the contract" for damages caused by "the acts or omissions of the indemnitor." N.M. Stat. § 56-7-1(B)(1). Applying New Mexico law thus points back to the New Mexico carve-out provision. Regardless, the result is the same: the agreement does not require JLL to indemnify BNSF for BNSF's own negligence.

Finally, Texas law compels the same conclusion as both the New Mexico carve-out and the New Mexico anti-indemnity statute. Texas enacted an anti-indemnity statute nearly identical to New Mexico's. Like the New Mexico statute, the Texas anti-indemnity statute applies to "construction contracts." Tex. Ins. Code § 151.102 (2012). For such contracts,

> a provision . . . is void and unenforceable as against public policy to the extent that it requires an indemnitor to indemnify, hold harmless, or defend a party, including a third party, against a claim caused by the negligence or fault, the breach or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract of the indemnitee, its agent or employee, or any third party under the control or supervision of the indemnitee, other than the indemnitor or its agent, employee, or subcontractor of any tier.

*Id.* Applied to the agreement here, the Texas anti-indemnity statute voids the indemnity provision "to the extent that it requires" JLL to indemnify BNSF for BNSF's own negligence. *Id.* The analysis and result is precisely the same under Texas law as under New Mexico law.

---

[59] BNSF speculates that the court that decided *Holguin* was not aware of a New Mexico Supreme Court case decided a month before *Holguin*. *See* BNSF's Resp. to JLL's Mot. for Summ. J. 26–27, ECF No. 90. This Court will not assume that New Mexico courts are unaware of binding precedent. Regardless, the case that BNSF says "appear[s] to be in conflict" with *Holguin* is reconcilable. *Id.*; *see also United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, 148 N.M. 426, 432, 237 P.3d 728, 734. The New Mexico Supreme Court held in *United Rentals* that construction equipment rental agreements fell under the scope of the anti-indemnity statute. *United Rentals*, 2010-NMSC-030, at ¶ 21. Nothing in *United Rentals* undermines the holding in *Holguin*.

BNSF levels a familiar argument against section 151.102, insisting it does not apply because the agreement is not a "construction contract." Like New Mexico law, Texas law broadly defines "construction contract" to include agreements "for the design, construction, alteration, renovation, remodeling, repair, or maintenance of . . . a building, structure, appurtenance, or other improvement to or on public or private real property." Tex. Ins. Code § 151.001(5). As the Court has said, the parties' agreement is indisputably a maintenance contract.[60] And because it is a maintenance contract, the agreement is a "construction contract" under the plain language of the statute. *Id.* Again, BNSF's attempts to avoid the statute's plain language are unpersuasive—BNSF relies almost entirely on cases that do not even discuss the Texas anti-indemnity statute.[61] The Court must give effect to the words of the Texas legislature in *this* statute, not the words of other states' legislatures in other statutes. *See Tijerina v. City of Tyler*, 846 S.W.2d 825, 827 (Tex. 1992) ("Statutory definitions must be given effect; ordinary meanings should be applied only to undefined terms."). The plain language of section 151.102 covers the agreement here.

BNSF also argues that section 151.102 does not apply outside of Texas. Generally, "a statute will not be given extraterritorial effect by implication but only when such intent is clear." *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006). BNSF acknowledges that no Texas court has held that the Texas anti-indemnity statute applies only in Texas.[62] Instead, BNSF relies on cases concerning analogous statutes. But in one of those cases, the Texas Supreme Court said it would "not read the statute to have an extraterritorial reach, *absent some agreement between the parties.*" *Maxus Expl. Co. v. Moran Bros.*, 817 S.W.2d 50, 57 (Tex.

---

[60] *See* BNSF's Summ. J. App. Ex. B, 67–70, ECF No. 29-2.
[61] *See* BNSF's Resp. to JLL's Mot. for Summ. J. 30–35, ECF No. 90.
[62] *See id.* at 36.

1991) (emphasis added). Here, the parties have agreed to be governed generally by Texas law.[63] That includes the Texas anti-indemnity statute. Alternatively, even if the parties had not agreed to be governed by Texas law, Texas law might apply because of ordinary choice-of-law principles. In that scenario, however, there is no extraterritoriality problem. The Court would apply the Texas anti-indemnity statute because Texas has a substantial relationship to the transaction. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990). Simply put, the Court would apply Texas law to a Texas contract. In either case, BNSF's extraterritoriality argument fails.

Arguably, Texas law requires the Court to apply the New Mexico carve-out anyway. Under Texas contract law, "[t]he parties are free to decide their contract's terms, and the law's 'strong public policy favoring freedom of contract' compels courts to 'respect and enforce' the terms on which the parties have agreed." *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 595 (Tex. 2018) (citations omitted). Reflecting these principles, "Texas recognizes that 'parties can agree to be governed by the law of another state.'" *Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 188 (5th Cir. 2021) (quoting *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014)). The New Mexico carve-out applies to services "held by a court of competent jurisdiction as being governed by" New Mexico's anti-indemnity statute.[64] Therefore, Texas law may—in a circular fashion—require the Court to decide whether New Mexico law applies, and then apply the carve-out.

The plain language of the parties' agreement cuts through the choice-of-law analysis. The parties agreed that JLL's obligation to indemnify BNSF is limited for services performed in New Mexico. BNSF's attempts to obfuscate that agreement are unavailing.

---

[63] BNSF's Summ. J. App. Ex. B, 33, ECF No. 29-2.
[64] BNSF's Summ. J. App. Ex. B, 19, ECF No. 29-2.

Before moving on to the next claim, the Court addresses one final point. BNSF repeatedly asserts that JLL is attempting to void all indemnity obligations it has to BNSF.[65] That misrepresents JLL's position. JLL has been specific and consistent in framing the issue, which is whether "JLL can be required to indemnify BNSF *for BNSF's own acts of negligence or for the acts of negligence of its employees*."[66] JLL does not ask the Court to absolve JLL of its duty to indemnify BNSF for JLL's negligence. And JLL has shown no indication that it intends to shirk that duty. Therefore, the Court **GRANTS** summary judgment in favor of JLL on Count 1 as to the alleged breach of the contractual obligation to indemnify BNSF. The Court's ruling likewise resolves BNSF's declaratory judgment claim on this issue, so the Court **GRANTS** summary judgment in favor of JLL as to Counts 6(C) through (J).

### B.  Agreement to Defend and Hold Harmless

BNSF also alleges in Count 1 that JLL breached its contractual obligations to defend BNSF and hold BNSF harmless.[67] JLL concedes that the agreement requires JLL to defend BNSF in the underlying lawsuit.[68] JLL also concedes that it is not defending BNSF in the lawsuit.[69] Nevertheless, JLL argues that it has not breached the agreement because Norris (through its insurer) is already defending BNSF in the underlying lawsuit, and Norris's insurance is primary to JLL's.[70] That argument fails for two reasons.

First, JLL's agreement with BNSF does not indicate that JLL's duty to defend is triggered only in excess of Norris's duty to defend. JLL points to the Norris agreement, which requires Norris to obtain insurance that "shall be primary and non-contributing with respect to

---

[65] *E.g.*, BNSF's Summ. J. Br. 27, ECF No. 28; BNSF's Resp. to JLL's Mot. for Summ. J. 20, ECF No. 90.
[66] JLL's Summ. J. Br. 8, ECF No. 84 (emphasis added).
[67] BNSF's First Am. Compl. 33–34, ECF No. 17.
[68] JLL's Summ. J. Br. 30–33, ECF No. 84.
[69] *Id.*
[70] *Id.*

any insurance carried by BNSF."[71] According to JLL, that means that JLL's duty to defend is triggered only in "excess" of Norris's duty to defend.[72] But Norris's insurance is primary to "insurance carried by BNSF," not insurance carried by JLL.[73] More importantly, Texas evaluates the duty to defend by looking to only two documents: the agreement and the underlying complaint. *See ACE Am. Ins. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012). The Court thus looks at the JLL agreement, not the Norris agreement. And the JLL contains no "excess" provision qualifying JLL's duty to defend. JLL is correct that, generally, "[a]n excess carrier is only responsible for defense and settlement costs when the limits of the primary coverages are exhausted." *Nutmeg Ins. v. Emps. Ins. of Wausau*, No. 3:04-cv-1762, 2006 WL 453235, at *13 (N.D. Tex. Feb. 24, 2006). But under its agreement with BNSF, JLL is not an excess carrier.

Second, JLL cites no authority supporting its argument that a third party's defense relieves JLL of its duty to defend BNSF. Courts in this district have rejected similar arguments when a party could "cite[] no Texas authority, or authority applying Texas law, that holds that a third party paying an insured's defense costs nullifies the insurer's duty to defend." *Boy Scouts of Am. v. Hartford Accident & Indem. Co.*, 443 F. Supp. 3d 753, 763 (N.D. Tex. 2020). In its reply brief, JLL entirely ignores that glaring hole in its position. JLL agreed to defend BNSF, and JLL does not dispute that the underlying complaint triggers its duty to defend.

JLL argues in the alternative that even if it must defend BNSF, it is required to do so only on claims arising from JLL's negligence. That argument fails, too. "The duty to defend is broader than the duty to indemnify." *St. Paul Ins. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App. 1999). If the underlying complaint "includes even one covered claim, the insurer

---

[71] BNSF's Summ. J. App. Ex. C, 5, ECF No. 29-3.
[72] JLL's Summ. J. Br. 33, ECF No. 84.
[73] BNSF's Summ. J. App. Ex. C, 5, ECF No. 29-3.

must defend the entire suit." *Evanston Ins. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). JLL does not dispute that the underlying complaint against BNSF alleges JLL's negligence. That is a covered claim, even according to JLL.[74] So JLL "must defend the entire suit." *Id.*

BNSF seeks summary judgment "on the issue of liability only."[75] It does not seek summary judgment on damages. The Court thus **GRANTS** summary judgment in favor of BNSF on Count 1 as to (1) the existence of an agreement by JLL to defend BNSF in the underlying lawsuit; (2) performance or tendered performance by BNSF; and (3) JLL's breach of the agreement to defend BNSF in the underlying lawsuit. The Court also **GRANTS** BNSF's claim for declaratory judgment on Count 6(A) as to JLL.

### C.  Agreement to Adjust and Settle

Count 3 of BNSF's complaint alleges that JLL breached its contractual obligation to adjust and settle the claims in the underlying lawsuit.[76] JLL insists that it has been fulfilling that obligation. JLL has participated in three mediations regarding the underlying lawsuit: one on October 23, 2020;[77] another on November 16, 2020;[78] and another on October 20, 2021.[79] JLL and BNSF also mediated this lawsuit.[80] BNSF does not allege that JLL participated in these mediations in bad faith, or that the mediations otherwise fail to satisfy JLL's obligation to adjust and settle the underlying lawsuit. BNSF has provided no evidence that JLL has breached its obligation to adjust and settle. The Court thus **GRANTS** summary judgment in favor of JLL on

---

[74] *See* JLL's Summ. J. Br. 36, ECF No. 84.
[75] BNSF's Summ. J. Br., 49, ECF No. 28.
[76] BNSF's First Am. Compl. 37–38, ECF No. 17.
[77] *Id.* at 15.
[78] *Id.* at 32.
[79] J. Report Regarding Mediation, ECF No. 80.
[80] *See* J. Report Regarding Mediation, ECF No. 75.

Count 3. The Court's ruling also resolves BNSF's request for a declaratory judgment on this issue, so the Court **GRANTS** summary judgment in favor of JLL on Count 6(B).

### D.  Agreement to Obtain Insurance

Count 5 of BNSF's complaint alleges that JLL breached its contractual obligation to obtain insurance.[81] BNSF contends that the agreement required JLL to obtain an insurance policy that lists BNSF as an insured.[82] JLL's insurer Zurich has denied coverage, saying that BNSF is not an insured under the policy.[83] BNSF argues that Zurich's position denying coverage means that JLL breached its obligation to list BNSF as an insured.[84] JLL does not dispute that the agreement requires it to list BNSF as an insured. Instead, JLL suggests that Zurich's position that BNSF is not an insured under the policy may be incorrect.[85] According to JLL, that makes BNSF's claim hypothetical and unripe for judicial determination.[86]

Federal courts lack authority to adjudicate cases that are not ripe. *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714–15 (5th Cir. 2012). "A court should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Id.* at 715 (cleaned up). In determining whether a case is ripe, "[t]he key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (cleaned up). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up). "A case is generally ripe if any remaining questions are purely legal ones," but

---

[81] BNSF's First Am. Compl. 37–38, ECF No. 17.
[82] BNSF's Resp. to JLL's Mot. for Summ. J. 49–51, ECF No. 90.
[83] JLL's Summ. J. App. Ex. M, 1, ECF No. 85-13.
[84] *See* BNSF's Resp. to JLL's Mot. for Summ. J. 49–51, ECF No. 90.
[85] JLL's Summ. J. Br. 42–43, ECF No. 84.
[86] *Id.*

"even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Choice Inc.*, 691 F.3d at 715 (cleaned up).

BNSF's claim does not rest on contingent future events. This case might be different if a court were currently adjudicating Zurich's interpretation of the policy. *See, e.g.*, *Monroe Guar. Ins. v. Newtex Realty, LP*, No. 3:18-cv-00256, 2019 WL 1261138 (N.D. Tex. Mar. 4, 2019) (dismissing a third-party negligent-procurement claim against an insurance agent as unripe because it was "entirely based on contingent future events that [the insured] itself admits are unlikely to occur"); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins.*, No. 1:20-cv-665, 2020 WL 6537230, at *4 (W.D. Tex. Nov. 5, 2020) (same). If a court were currently adjudicating the issue, then whether BNSF violated the agreement would arguably be contingent on the court's future ruling. Here, however, the scope of the policy is a legal issue fit for judicial determination and is not contingent on some future event.

Indeed, this Court could interpret Zurich's policy and determine whether BNSF is an insured under the policy. Then, if necessary, the Court could address whether JLL breached its obligation to list BNSF as an insured on the policy. Unfortunately, neither party attached Zurich's policy to its motion for summary judgment. And although BNSF cites "old law school lore," neither party cites appropriate authority supporting its position.[87] The Court thus **DENIES** JLL's summary judgment motion as to Count 5.[88]

## IV.    CONCLUSION

For the reasons stated in this Order, the Court disposes of the claims as follows:

(1) The Court **DENIES** BNSF's Motion for Partial Summary Judgment (ECF No. 27) on Count 1 as to JLL's alleged breach of the contractual obligation to indemnify BNSF. The

---

[87] BNSF's Resp. to JLL's Mot. for Summ. J. 50, ECF No. 90.
[88] BNSF did not move for summary judgment on Count 5.

17

Court **GRANTS** JLL's Motion for Summary Judgment (ECF Nos. 83) on Count 1 as to the alleged breach of the contractual obligation to indemnify BNSF and **DISMISSES** the claim.

(2) The Court **DENIES** JLL's Motion for Summary Judgment on Count 1 as to the alleged breach of the contractual obligation to defend BNSF and hold BNSF harmless. The Court **GRANTS** BNSF's Motion for Partial Summary Judgment on Count 1 as to (1) the existence of an agreement by JLL to defend BNSF in the underlying lawsuit; (2) performance or tendered performance by BNSF; and (3) JLL's breach of the agreement to defend BNSF in the underlying lawsuit. The Court also **GRANTS** BNSF's claim for declaratory judgment on Count 6(A) as to JLL.

(3) The Court **DENIES** BNSF's Motion for Partial Summary Judgment on Counts 3 and 6(B). The Court **GRANTS** JLL's Motion for Summary Judgment on Counts 3 and 6(B) and **DISMISSES** those claims.

(4) The Court **DENIES** JLL's Motion for Summary Judgment on Count 5.

(5) The Court **GRANTS** JLL's Motion for Summary Judgment on Counts 6(C) through 6(J) and **DISMISSES** those claims.

(6) Given the Court's rulings in this Order, the Court **DENIES** the parties' Joint Motion to Continue Trial (ECF No. 107).

**SO ORDERED** on this **24th day** of **February, 2022**.

_Reed O'Connor_
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**